## Trimble v. Fester, Appellant.

Argued May 2, 1932.

Before TREX-LER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Edward J. Gannon* of *Hazlett, Gannon & Walter,* for appellant.

*John E. Winner* for appellee.

OPINION BY STADTFELD, J., October 10, 1932:

This was an action of assumpsit brought by Harry L. Trimble against Joseph H. Fester, to recover the sum of $2,399.53, with interest from September 20, 1927, a balance alleged to be due on a written agreement under which plaintiff agreed to provide all the materials, and perform all the work for the alterations, additions and repairs to a store and apartment building and row of four houses in the Borough of Brackenridge. Under the agreement, copy of which is attached to plaintiff's statement, and dated May 31, 1927, plaintiff agreed to provide all the materials and perform all of the work as shown on the drawings and specified in the specifications prepared by Stuart and Scheuneman, architects, and which are made part of the contract. The work was to be done under the direction of said architects and no alterations were to be made in the work, except upon the written order of the architects. The contract further provided that in case the contractor fail to prosecute the work with promptness and diligence, if the architects shall certify that such failure is sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor and enter upon the premises for the purpose of completing the work included under the contract. The work was to be completed within ninety days from the time the contract was signed. The contractor agreed to pay the owner the sum of $20 per day for every day over ninety days to complete the work. The owner agreed to pay the contractor $10 per day for every day under ninety days time to complete the same.

The contract further provided, inter alia, that if the

contractor be delayed by the act, neglect or default of the owner, then the time fixed therein for completion shall be extended for a period equivalent to the time lost by reason of such cause, which extended period shall be determined and fixed by the architects, but no such allowance shall be made unless a claim is presented in writing to the architects within forty-eight hours of the occurrence of such delay. The total consideration to be paid to the contractor by the owner was the sum of $24,900.

In plaintiff's statement, he avers that he proceeded to do the work in accordance with the terms and conditions of said agreement; that he received his orders for the same from the defendant, and not from the architects mentioned in said agreement. That from time to time defendant directed plaintiff to change the plans and specifications for said work, and on July 25, 1927, defendant authorized and directed plaintiff in writing to make certain changes and additions at a cost of $1,440.

Plaintiff further averred that by reason of the changes made in said work and the manner of constructing the same, the provision of the contract which required the work to be fully completed within ninety days was abrogated by mutual consent.

Plaintiff averred that he completed the alterations, additions and repairs described in the written agreement, and, in addition to the extra work authorized in writing on July 25, 1927 at defendant's special request, furnished certain other extra work amounting to the sum of $385.17. That the total amount due plaintiff by reason of the contract and the extra work is the sum of $26,725.17, upon which defendant is entitled to a credit of $24,325.64, leaving a balance of $2,399.53, with interest thereon as aforesaid, due and owing.

To this statement of claim, defendant filed an affidavit of defense, denying that any changes were made in the written agreement, or that the clause concern-

ing the completion of the work was abrogated by mutual consent, or that any other agreements were made or substituted for those contained in that portion of said contract. Defendant admitted the extra work set forth in plaintiff's statement. Defendant denied the indebtedness set forth in said statement, and claimed that in addition to the credit given by plaintiff thereon, defendant paid to plaintiff on account of said contract, on May 31, 1928, the sum of $1,200.

Defendant further averred that plaintiff delayed completing the work until January 15, 1928, a total of 229 days, and claimed due and owing to him by plaintiff the sum of $20 per day for each of 139 days, or a total of $2,780, and the further sum of $800 for the correction of defective work, and failure of plaintiff to perform the work in a workmanlike manner, and in accordance with the plans and specifications, leaving a balance due defendant in the sum of $2,380.47, for which he asked for a certificate in his favor.

A replication was filed by plaintiff averring that defendant had a tenant in a portion of the premises to be repaired, and that said tenant had a lease on said property for a period of two months, and refused to vacate, by reason of which plaintiff was unable to commence work until the property was vacated, and that defendant then and there advised plaintiff that he, defendant, would not hold plaintiff to that portion of the contract requiring the work to be done within a specified time. Plaintiff denied the credit of $1,200 claimed by defendant, and averred that of said sum, $1,099.36 was applied by plaintiff toward the Watson Boulevard job, due from defendant to plaintiff.

Plaintiff denied that he delayed completing the work until January 15, 1928, and averred that the same was substantially completed during the early part of November, 1927, and that defendant occupied the premises by his tenants prior to completion. Plaintiff further

averred that the work was not completed with the time specified, for the reason that defendant was attempting to lease the premises to the United States government for post office purposes, and at defendant's request, the work was held up until defendant could ascertain whether he could make such lease with the government.

Plaintiff denied the averments as to alleged defective work, and denied the alleged indebtedness on account of delay, and averred that defendant was attempting to sell the building, and advised plaintiff that he would pay the latter the amount of the indebtedness claimed by plaintiff when the building was sold.

On the issues thus framed the case went to trial before SWEARINGEN, J., and a jury, and resulted in a verdict in favor of plaintiff and against defendant in the sum of $2,399.53, being the amount of plaintiff's claim without interest. A motion for new trial was made ex parte defendant, which was refused, and judgment entered on the verdict. From that judgment this appeal is taken by defendant.

There are three assignments of error. The first that the court erred in affirming plaintiff's first point which was: "If you find from the evidence that the defendant, by words or conduct, indicated to the plaintiff that he would not hold him to the ninety days time fixed for completion in the contract, the defendant cannot now claim damages for any delay in the completion of the work." The second is the overruling of defendant's motion for a new trial; and the third, in entering judgment on the verdict.

Nowhere in the record does it appear that an exception was taken to the action of the court in the affirmance of plaintiff's first point. This is in direct violation of rule 24 of this court, and the action of the trial court in relation to the matter complained of is not the subject of an assignment of error. We have nevertheless carefully examined the testimony.

There was no denial by defendant in the pleadings that plaintiff received his orders for the work from the defendant and not from the architect, as also for the extra work, as averred in plaintiff's statement.

It appears from the testimony that the repairs as contracted for were occasioned and necessitated as a result of a fire. Plaintiff testified that he started work the first Monday after the contract was signed; that he found a man on the premises conducting a fire sale in the two front storerooms. That the next day he had a conversation with the defendant at the latter's office in which he advised defendant that his tenant was in possession, and that plaintiff could not get possession of the building to go ahead with the construction. That defendant, after calling up his, defendant's, attorney, and the latter calling up the attorney for the tenant, told plaintiff to go ahead with the building, and he wouldn't hold him to the time. That the tenant was in the premises around about three months after plaintiff went there. That there was a fire wall to be built between the row of houses and the storeroom, and he wouldn't give plaintiff permission to tear down the wall between the storeroom and the houses, and wouldn't let him do any work on the second and third floors over the stores. That he completed the work sometime in November of 1927. That the rear four houses were completed first, and that there was a tenant in one of them in October, 1927. That plaintiff held back the storeroom for the reason that defendant claimed he had a prospect to rent the store to the post office department, and that if he did any work in the storeroom, he would have to tear it out, because the post office department required him to make certain changes. This conversation, plaintiff claimed, occurred about August or September. Plaintiff further testified that the ninety day clause in the agreement was set aside by mutual consent, both because of the extra work and the delay caused by the tenant, and that de-

fendant told him that he wouldn't hold plaintiff to the time limit, and that he held back at the request of defendant.

Plaintiff denied that the $1,200 check, for which defendant claimed credit, was to be applied on the Brackenridge job. That he applied part to the Watson Boulevard job, and the balance to the Brackenridge job; that no counterclaim was set up by defendant until this suit was entered; that defendant, after the payment of the $1,200, said whenever he sold the building he would straighten up and pay the balance due on the building.

Louis Demharter, a witness on behalf of plaintiff, testified that he had a conversation with the defendant in the latter part of August, or the fall of 1927, about part of the building being used for a post office, and that he gave a price to defendant for some work to be done in that connection in case the government took it over.

Defendant, on his own behalf, testified that he had a contract made on March 1, 1927, for the purchase of the property which was to be closed on April 1, 1927; that a fire took place on March 25th, and the contract for repairs with Trimble was made May 31, 1927. That any tenants in the building when he dealt with the plaintiff were there prior to his obtaining the property. Defendant denied that the matter of abrogating or setting aside the ninety day clause in the contract was ever mentioned between him and plaintiff, and that no change was ever made or agreed to in relation thereto.

Defendant denied ever having told plaintiff to delay the work until the negotiation concerning the post office would be completed. Defendant claimed that he did not get possession of the property from plaintiff until sometime early in January of 1928, when the keys were turned over. Defendant claimed that the

$1,200 check was given on the Brackenridge job, and he so stated to plaintiff.

Defendant admitted that when he purchased the property, he took it subject to the existing leases that were on it; that he did not inform plaintiff of this fact before the latter signed the contract to alter and repair.

Defendant did not know how many days he counted upon as penalty against plaintiff. He admitted that three of his tenants moved in prior to January, one in September, and the others from then on through to January 1st, and the fourth, about January 14th, and rent was paid by them from the time they entered into possession.

Dale McPherson, called on behalf of defendant, testified that he was foreman on the work done on the Fester building in Brackenridge, working for plaintiff; that he completed the general construction work on November 12th. He denied that the work was delayed because some tenant occupied one of the storerooms. That in June, ten days after he went there, a partition was put in one of the storerooms for the purpose of avoiding delay. This took only half a day.

Appellant contends that the testimony in relation to the alleged abrogation of the ninety day clause in the contract, is an attempt to establish a parol modification of the written contract, and that the evidence does not measure up to the standard fixed by law to sustain the verdict; that the submission of the alleged parol agreement was erroneous for the reason that it was without consideration. We cannot agree with this contention.

In Phillips v. Am. Cem. Tile Mfg. Co., 220 Pa. 141, the court on page 147, quoting from Holloway v. Frick, 149 Pa. 178, said: " 'It is always competent for the parties to a written contract to show that it was subsequently abandoned in whole or in part, modified, changed or a new one substituted. And this may be

shown by parol, by showing either an express agreement, or actions necessarily involving the alteration.' "

Germantown Dairy Co. v. McCallum, 223 Pa. 554, in which case the court on page 560 said: "Where the effort is to contradict the terms of a written contract, the measure of proof is as stated by appellant; but where it goes no further than to show a subsequent modification or waiver of something provided for in the contract, while the burden is upon the party asserting the change, all that is required is that the evidence in support of the claim should be convincing to the jury." To same effect, Reber v. Brownback, 27 Pa. Superior Ct. 471; Achenbach v. Stoddard, 253 Pa. 338.

We feel that the matters in dispute were for the consideration of the jury.

The fact that, although the contract provided that in case the contractor at any time fail in any respect to prosecute the work with diligence, such failure being certified by the architect as sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor, and complete the work himself, the owner did not seek recourse to this remedy, notwithstanding the long delay alleged in the completion of the work. Likewise, the contractor did not seek from the architect an extension of time for the completion of the work, as provided under the terms of the contract, in case of default on part of the owner. These matters were strongly corroborative of the claim of plaintiff of the abandonment of the ninety day clause in the agreement. The jury by its verdict has found in favor of plaintiff on this contention.

Under the admission of defendant that he did not inform plaintiff of the outstanding lease under which the tenant in the storeroom claimed possession at the time the contract was executed, plaintiff, not being able to obtain possession of the entire premises at the time, would have been warranted in refusing to proceed under the contract. His willingness to pro-

ceed under the promise of defendant that he would not hold plaintiff to the time limit was a sufficient consideration for proceeding with the work, and defendant would be estopped from claiming under the time limit thereafter.

On the question of the application of the $1,200 payment, that was purely a question of fact under the testimony.

The case was fairly submitted in a full and comprehensive charge, and the verdict is sustained by the evidence. The fact that the jury allowed only the face of the claim, and did not allow any interest for the period of over three and one-half years for which claim was made, is a strong indication that the jury gave defendant what it considered a fair allowance under the evidence for any alleged delay in the completion of the work. We cannot say that there was an abuse of discretion in refusing the motion for a new trial.

The assignments of error are overruled and judgment affirmed at appellant's cost.